NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0363n.06

No. 15-1608

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
|  | ) | Jun 30, 2016 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR |
| CHRISTOPHER TURRYLE BRYANT, | ) | THE WESTERN DISTRICT OF |
|  | ) | MICHIGAN |
| Defendant-Appellant. | ) |  |
|  | ) |  |
|  | ) |  |

BEFORE: SUHRHEINRICH, DAUGHTREY, and ROGERS, Circuit Judges.

PER CURIAM. Defendant Christopher Turryle Bryant appeals the district court's judgment of conviction. A jury convicted Bryant of transportation for purposes of prostitution in violation of 18 U.S.C. § 2421 (Count One); sex trafficking or attempted sex trafficking by force, fraud, or coercion in violation of 18 U.S.C. §§ 1591(a)(1), (b)(1), and (e) and 1594(a) (Count Two); sex trafficking of a minor by force, fraud, or coercion in violation of 18 U.S.C. § 1591(a)(1), (a)(2), (b)(1), (b)(2), (c), and (e) (Count Three); and sex trafficking of a minor in violation of 18 U.S.C. § 1591(a)(1), (b)(2), and (c) (Counts Four and Five). The district court sentenced Bryant to a total of 480 months of imprisonment, to be followed by five years of supervised release.

On appeal, Bryant argues that (1) the prosecution presented insufficient evidence to support his convictions, (2) the district court erred in ruling that an FBI agent was qualified to testify as an expert witness, (3) a police officer's testimony disclosing the results of a rape kit

violated Bryant's rights under the Confrontation Clause, and (4) the district court misjoined the counts against Bryant. We find no reversible error and affirm.

In his first ground for relief, Bryant argues that the government presented insufficient evidence at trial to support his convictions. We review Bryant's challenge to the sufficiency of the government's evidence *de novo*. *See United States v. Collins*, 799 F.3d 554, 589 (6th Cir.), *cert. denied*, 136 S. Ct. 601 (2015). On appeal, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "In undertaking this analysis, this court neither independently weighs the evidence, nor judges the credibility of witnesses who testified at trial." *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

Count One charged Bryant with transporting Y.W. for purposes of prostitution in violation of 18 U.S.C. § 2421. In order to convict Bryant of this offense, the government was required to prove that Bryant (1) knowingly transported Y.W. in interstate commerce, (2) with the intent to have her engage in prostitution or other criminal sexual activity. 18 U.S.C. § 2421; *see United States v. Farber*, 336 F.2d 586, 587-88 (6th Cir. 1964). Bryant challenges the sufficiency of the government's evidence as to both elements.

Y.W. testified that, in the summer of 2012, as the result of the violent nature of her relationship with Bryant, she sustained multiple injuries and lost custody of her children. After her children were placed in foster care, Bryant suggested that Y.W. and Bryant relocate from Michigan to Arizona. In September 2012, Y.W. agreed to travel with Bryant to Arizona because he "told [her she] had to go." At Bryant's direction, Y.W. used her Supplemental Security Income ("SSI") card to withdraw over one thousand dollars to pay several hundred dollars for their bus tickets. Y.W. gave her remaining cash to Bryant "[b]ecause he did not want [her] to have any money on [her SSI] card and he wanted all of [her] money to be in his pockets."

Bryant, who did not have any money of his own at the time, controlled Y.W.'s SSI card and cash during their trip to Arizona.

Y.W. testified that, upon their arrival in Phoenix, Arizona, Bryant used her SSI card to rent a motel room. The next day, Bryant purchased a "very provocative" outfit for Y.W. and, that night, instructed her to put on the outfit, do her hair, and put on her makeup. Bryant then brought Y.W. to a street in Phoenix where he told her "to walk the strip," which Y.W. understood to mean that she "had to prostitute." Bryant told her where to walk and how to attract customers, and said that her first customer would have to buy condoms. He then watched from nearby as Y.W. attempted to solicit customers. At the end of the night, Bryant became angry because Y.W. had not had sex for money, "started cussing [her] out," and told her "that he had another girl working for him and that she made a lot of money." Viewing this evidence in the light most favorable to the prosecution, *see Jackson*, 443 U.S. at 319, we conclude that a rational juror could have concluded that Bryant transported Y.W. in interstate commerce with the intent to have her engage in prostitution. *See* 18 U.S.C. § 2421.

Count Two charged Bryant with sex trafficking or attempted sex trafficking of Y.W. by force, fraud, or coercion, in violation of 18 U.S.C. §§ 1591(a)(1), (b)(1), and (e) and 1594(a). To convict Bryant of this offense, the government was required to prove that (1) Bryant knowingly did or attempted to recruit, entice, harbor, transport, provide, obtain, or maintain by any means Y.W.; (2) Bryant knew or recklessly disregarded the fact that force, threats of force, fraud, or coercion would be used to cause Y.W. to engage in a commercial sex act; and (3) the offense was in or affected interstate commerce. 18 U.S.C. §§ 1591(a)(1), 1594(a). Bryant challenges the sufficiency of the government's evidence only as to the "use-of-force" element.

In addition to the testimony described above, Y.W. testified that, after Bryant "cuss[ed] [her] out" for failing to have sex for money, Bryant and Y.W. returned to the motel room that Bryant had rented with Y.W.'s money. Bryant remained angry and, once inside the room, "started beating on" Y.W. Y.W. sought help from a motel employee, who let her stay with him until "things died down with Mr. Bryant." When Y.W. returned to Bryant, they relocated to another hotel, where "he beat [her] again, and raped [her]." When Y.W. attempted to escape

through a bathroom window, Bryant pulled her back inside and continued to assault her. When Y.W. tried to call for help, Bryant threw and shattered her phone. Bryant also threatened to call Child Protective Services in Michigan to tell them that Y.W. was in Arizona prostituting herself, "that [she] didn't care about [her] kids, and that [she] didn't want them." The next morning, while Bryant was placing an order for her at McDonald's, Y.W. "took off running," sought refuge at a nearby shelter, and was taken to a hospital for a medical examination. Phoenix Police Officer Veronica Gomez, who was dispatched to the emergency room to collect evidence of Y.W.'s sexual assault, provided corroborating testimony. Viewing this evidence in the light most favorable to the prosecution, *see Jackson*, 443 U.S. at 319, a rational juror could have concluded that Bryant knew or recklessly disregarded the fact that force, threats of force, fraud, or coercion would be used to cause Y.W. to engage in a commercial sex act. *See* 18 U.S.C. § 1591(a)(1).

Bryant's arguments to the contrary are unavailing. First, Bryant contends that the government failed to prove that he used force, fraud, or coercion against Y.W. within the Western District of Michigan to cause her to engage in prostitution. The government was not required to prove that conduct satisfying the "use-of-force" element of § 1591(a)(1) occurred in the Western District of Michigan. *See* 18 U.S.C. § 1591(a)(1). In any event, the government presented ample evidence from which a rational juror could have concluded that Bryant used force, threats of force, fraud, or coercion, beginning in the Western District of Michigan, to cause Y.W. to engage in prostitution. Second, Bryant argues that the government failed to prove that he used force against Y.W. to cause her to engage in prostitution. The "use-of-force" clause requires a showing of force, threats of force, fraud, or coercion. *Id.* Thus, the government was not required to prove the use of force; proof of threats of force, fraud, or coercion sufficed under the statute. Moreover, the government presented ample evidence from which a rational juror could have concluded that Bryant used force against Y.W. to cause her to engage in prostitution. Third, Bryant suggests that because no charges were filed against him in Arizona, he could not have committed the charged offenses against Y.W. In light of the evidence presented at trial, a rational juror could have disagreed.

Count Three charged Bryant with sex trafficking of S.C., a minor, by force, fraud, or coercion in violation of 18 U.S.C. § 1591(a)(1), (a)(2), (b)(1), (b)(2), (c), and (e). To convict Bryant of this offense, the government was required to prove that (1) Bryant knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained by any means S.C.; (2) Bryant knew or recklessly disregarded the fact that (a) S.C. was under the age of 18 and would be caused to engage in a commercial sex act, and (b) force, threats of force, fraud, or coercion would be used to cause S.C. to engage in a commercial sex act; and (3) the offense was in or affected interstate commerce.[1] 18 U.S.C. § 1591(a)(1). Bryant argues that the government presented insufficient evidence that his conduct involving S.C. was in or affecting interstate commerce, that he knew or recklessly disregarded the fact that S.C. was under the age of 18 and would be caused to engage in a commercial sex act, and that he knew or recklessly disregarded the fact that force, threats of force, fraud, or coercion would be used to cause S.C. to engage in a commercial sex act.

S.C. testified that Bryant posted photos of her in an online advertisement on Backpage.com. As a result of this advertisement, which Bryant paid for, people called to arrange commercial sex dates with S.C. Viewing this evidence in the light most favorable to the prosecution, *see Jackson*, 443 U.S. at 319, a rational juror could have concluded that Bryant's use of the internet satisfied the interstate nexus requirement. *See United States v. Napier*, 787 F.3d 333, 346-47 (6th Cir. 2015).

S.C. further testified that, when she failed to obey Bryant's instructions regarding her curfew one night, he accused her of having sex for free, grabbed her by the neck, threw her onto the bed, and, while holding her down, told her that he "could kill [her] and no one would know" and that "no one would miss [her]." S.C. also testified that, although she initially told Bryant that she was 18, she later told him that she was 17, and he thereafter continued to arrange

---

[1]To obtain a conviction under § 1591, the government is required to prove either that force, fraud, or coercion were used, or that the victim was under the age of 18. 18 U.S.C. § 1591(a)(1). However, the penalty for sex trafficking by force, fraud, or coercion is higher than that for trafficking of a minor who has attained the age of 14. 18 U.S.C. § 1591(b). In this case, the government pursued a conviction for Bryant's trafficking of S.C. under both theories.

commercial sex dates for her. Viewing this evidence in the light most favorable to the prosecution, *see Jackson*, 443 U.S. at 319, a rational juror could have concluded that Bryant knew or recklessly disregarded the fact that force, threats of force, fraud, or coercion would be used to cause S.C. to engage in a commercial sex act, and knew or recklessly disregarded the fact that S.C. was under the age of 18 and would be caused to engage in a commercial sex act. *See* 18 U.S.C. § 1591(a)(1).

Counts Four and Five charged Bryant with sex trafficking of B.R. and K.L., both minors, in violation of 18 U.S.C. § 1591(a)(1), (b)(2), and (c). To convict Bryant of these offenses, the government was required to prove that (1) Bryant knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained by any means B.R. and K.L.; (2) Bryant knew or recklessly disregarded the fact that B.R. and K.L. were under the age of 18 and would be caused to engage in a commercial sex act; and (3) the offenses were in or affected interstate commerce. 18 U.S.C. § 1591(a)(1). Bryant argues that the government presented insufficient evidence that his conduct involving B.R. and K.L. was in or affecting interstate commerce, and asserts that "both [B.R.] and [K.L.] were willing participants in the conduct."

B.R. testified that she communicated with Bryant through Facebook and that Bryant posted nude photos of her in a Backpage.com advertisement. K.L. testified that Bryant recruited her through Facebook and posted photos of her in her underwear in a Backpage.com advertisement. Viewing this evidence in the light most favorable to the prosecution, *see Jackson*, 443 U.S. at 319, a rational juror could have concluded that Bryant's use of the internet satisfied the interstate nexus requirement. *See Napier*, 787 F.3d at 346-47. To the extent that Bryant argues that the government failed to present sufficient evidence that he used force, fraud, or coercion to cause B.R. and K.L. to engage in a commercial sex act, he misconstrues the requirements of § 1591(a)(1). To obtain a conviction for sex trafficking of a minor, the government was not required to establish the use of force, fraud, or coercion. *See* 18 U.S.C. § 159 (a). Accordingly, the government presented sufficient evidence at trial to support Bryant's convictions.

In his second ground for relief, Bryant argues that the district court erred in allowing FBI Agent James E. Hardie to testify as an expert witness. We review the district court's admission of expert testimony for an abuse of discretion. *United States v. Smith*, 601 F.3d 530, 539 (6th Cir. 2010). "Under Federal Rule of Evidence 702, a person with 'specialized knowledge' qualified by his or her 'knowledge, skill, experience, training, or education' may give opinion testimony if it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *United States v. Johnson*, 488 F.3d 690, 698 (6th Cir. 2007) (quoting Fed. R. Evid. 702).

Bryant claims that Agent Hardie's testimony was not helpful to the jury. Specifically, he claims that, because "[p]opular movies, television and books have familiarized the public to" relationships between pimps and prostitutes and "[t]he hierarchy and the standards of refusing service to African-Americans were not issues within the case," Agent Hardie's testimony did not assist the jury in understanding the evidence or facts at issue. The district court concluded that "a jury is not generally equipped to evaluate testimony on sex trafficking cases" and "complicated pimp/prostitute relationships," and found that Agent Hardie's testimony would assist the jury. This ruling was not an abuse of discretion. Bryant's relevancy challenge to Agent Hardie's testimony on the refusal of prostitution services to African-American men is also unavailing. Trial testimony established that, in an advertisement that Bryant posted for K.L., Bryant included a disclaimer requesting that African-American men not respond to the posting. Trial testimony also established that Bryant told Y.W. not to service any African-American customers. The district court did not abuse its discretion in determining that Agent Hardie's testimony regarding perceptions of African-American "johns" would assist the jury in understanding this evidence.

Bryant also claims that Agent Hardie was not qualified to testify as an expert witness because "there is no evidence that [Agent Hardie] has performed research, compiled data in any scientific fashion, or applied that research to other cases." Agent Hardie testified that he had been an FBI agent since 2001, that he was currently the FBI Liaison to the National Center for Missing and Exploited Children, and that he previously had run the Northwest Ohio Violent Crimes Against Children Task Force. He also testified to his extensive education and training in

the area of child sex-trafficking.  The district court concluded that, based on Agent Hardie's education, training, and experience, he had specialized knowledge about sex trafficking and was qualified to testify as an expert witness.  This ruling likewise was not an abuse of discretion.  *See* Fed. R. Evid. 702; *United States v. Cunningham*, 679 F.3d 355, 378 (6th Cir. 2012).

In his third ground for relief, Bryant challenges Officer Gomez's statement, on redirect examination, that Y.W.'s rape kit results implicated Bryant.  He claims that, because Officer Gomez did not prepare or analyze the test results, his rights under the Confrontation Clause were violated by her testimony.  *See Bullcoming v. New Mexico*, 564 U.S. 647, 660-62 (2011).  But because Bryant did not object to Officer Gomez's testimony in the district court, we review his claim for plain error only.  *See United States v. Ford*, 761 F.3d 641, 652 (6th Cir.), *cert. denied*, 135 S. Ct. 771 (2014).  "To establish plain error, a defendant must show (1) that there was an error—'some sort of deviation from a legal rule'; (2) that the error was 'obvious, rather than subject to reasonable dispute'; and (3) that the error affected the defendant's 'substantial rights,'" *United States v. Martinez*, 588 F.3d 301, 313 (6th Cir. 2009) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)), "which in the ordinary case means he must demonstrate that it 'affected the outcome of the district court proceedings.'"  *Puckett*, 556 U.S. at 135 (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).  Bryant has failed to demonstrate that Officer Gomez's brief reference to Y.W.'s rape kit results, which were not mentioned at any other point during the trial, "affected the outcome of the district court proceedings."  *Id.* (quoting *Olano*, 507 U.S. at 734).  Accordingly, he has failed to establish plain error.  *See Martinez*, 588 F.3d at 314.

In his fourth ground for relief, Bryant argues that the district court erred in "allow[ing] a joint trial of counts which occurred in 2012 in Arizona," *i.e.*, those involving Y.W., "with unrelated counts occurring in 2014 in Michigan," *i.e.*, those involving S.C., B.R., and K.L.  He claims that "joinder of the counts was highly prejudicial.  By including the 2012 Arizona conduct, the jury heard that Bryant raped [Y.W.]."  Because Bryant did not raise this issue in the district court, we review the district court's joinder of the counts for plain error.  *See United States v. Soto*, 794 F.3d 635, 655 (6th Cir. 2015), *cert. denied*, 2016 WL 2842492 (U.S. May 16, (2016) (No. 15-7432).  Under Rule 8, the government may join multiple counts "if the offenses

charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Under Rule 14, the district court may sever the joined counts if it appears that their consolidation will prejudice the defendant. Fed. R. Crim. P. 14. The government met the requirements of Rule 8 because the charged offenses were of the same or similar character and were part of a common scheme or plan involving the commercial sale of sex. *See* Fed. R. Crim. P. 8(a). Bryant's conclusory statement that the joinder of the counts "was highly prejudicial" is insufficient to establish prejudice. *See United States v. Hang Le-Thy Tran*, 433 F.3d 472, 478 (6th Cir. 2006). Accordingly, Bryant has failed to establish that the district court erred, much less plainly erred, in joining the counts.

For these reasons, we **AFFIRM** the district court's judgment.